## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| TIMOTHY WOOTEN and PAUL WHITE, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>UNLIMITED CARRIER, INC., TRANS QUALITY INC., ES EXPRESS LINES, INC., SVAJUNAS MASIULIONIS, individually, ARNOLDAS BLINSTRUBAS, individually, and EDVINAS BALCIUNAS, indidivually,<br><br>     Defendants. | Civil Action No. <u>1:24-cv-01568</u> |

## CLASS ACTION COMPLAINT

1. Defendants Unlimited Carrier, Inc. ("Unlimited Carrier") and Trans Quality Inc. ("Trans Quality") are motor carriers headquartered in Bolingbrook, Illinois, that provide general freight delivery services to customers throughout the contiguous United States.

2. Trans Quality also does business under the assumed name "UC Carrier."

3. On information and belief, Defendant ES Express Lines, Inc. ("ES Express Lines") previously operated as a motor carrier along with Trans Quality and Unlimited Carrier at their previous headquarters in Lemont, Illinois.

4. ES Express Lines, Inc. now has a principal office in Willowbrook, Illinois.

5. Together, Unlimited Carrier, Trans Quality, and ES Express Lines are referred to herein as the "Corporate Defendants." The Corporate Defendants and the individual defendants,

Svajunas Masiulionis, Arnoldas Blinstrubas, and Edvinas Balciunas, are referred to collectively as "Defendants."

6.      Plaintiffs Timothy Wooten ("Wooten") and Paul White ("White") (together, "Plaintiffs") are former truck drivers for Defendants. On behalf of themselves and on behalf of all others similarly situated, they bring claims against the Corporate Defendants based on their violations of the federal Department of Transportation's regulatory requirements, known as the Truth-in-Leasing regulations ("TIL regulations"), codified as 49 C.F.R. § 376, *et seq*.

7.      Specifically, and as set forth in more detail herein, Plaintiffs allege that the Corporate Defendants violated the TIL regulations with respect to drivers with whom they executed lease agreements ("lease drivers") by, *inter alia*, taking undisclosed, unspecified, and improper deductions and "chargebacks" from drivers' compensation, failing to include mandatory provisions, disclosures, and terms in their lease agreements with drivers, and failing to compensate drivers properly.

8.      In addition, Plaintiffs bring this action individually and on behalf of all others similarly situated against all Defendants alleging violations of the Illinois Wage Payment and Collection Act (the "IWPCA"), 820 Ill. Comp. Stat. 115/1 *et seq.*,

9.      Specifically, and as set forth in more detail herein, Plaintiffs claim that Defendants misclassified lease drivers as independent contractors when they were, as a matter of law, employees; failed to pay lease drivers all wages owed; took unlawful and excessive deductions from lease drivers' wages; and required lease drivers to pay for necessary expenditures incurred within the scope of their employment and directly related to services performed for Defendants, which inured to the primary benefit of Defendants.

## THE PARTIES

10.     Plaintiff Timothy Wooten is an adult resident of Montgomery County in Georgia. From 2014 through approximately February 2023, Wooten worked for Defendants as a lease driver and performed work in the State of Illinois.

11.     Plaintiff Paul White is an adult resident of Montgomery County in Georgia. From 2014 through December 2023, White worked for Defendants as a lease driver and performed work in the State of Illinois.

12.     Plaintiffs bring this action individually and on behalf of all others similarly situated, namely: all persons who, during the applicable statutory period, performed work in Illinois while subject to a written lease agreement with Unlimited Carrier, Trans Quality, and/or ES Express Lines.

13.     Defendant Unlimited Carrier is an Illinois corporation with a principal office at 465 Crossroads Parkway in Bolingbrook, Illinois. Unlimited Carrier does business in Illinois, operates facilities in Illinois, and is registered with the Illinois Secretary of State.

14.     Defendant Trans Quality is an Illinois corporation with a principal office at 465 Crossroads Parkway in Bolingbrook, Illinois. Trans Quality does business in Illinois, operates facilities in Illinois, and is registered with the Illinois Secretary of State.

15.     Defendant ES Express Lines is an Illinois corporation with a principal office in Willowbrook, Illinois. ES Express is registered with the Illinois Secretary of State and has done business in Illinois and has operated facilities in Illinois.

16.     Defendant Svajunas Masiulionis is an adult resident of Lemont, Illinois. In his role as president, secretary, and treasurer of Unlimited Carrier, Masiulionis possesses and exercises the authority to: make or participate in decisions concerning lease drivers' employment

relationship with Defendants; make or participate in decisions about lease drivers' compensation; implement and enforce rules affecting the material terms of lease drivers' work, employment, and compensation; and hire lease drivers, supervise their work, and impose discipline on them.

17.     In his role as president and secretary of Unlimited Carrier, Masiulionis knowingly permitted the wage payment, deduction, and independent contractor classification practices alleged herein.

18.     Defendant Arnoldas Blinstrubas is an adult resident of Homer Glen, Illinois. In his role as president, secretary, and treasurer Trans Quality, Blinstrubas possesses and exercises the authority to: make or participate in decisions concerning lease drivers' employment relationship with Defendants; make or participate in decisions about lease drivers' compensation; implement and enforce rules affecting the material terms of lease drivers' work, employment, and compensation; and hire lease drivers, supervise their work, and impose discipline on them.

19.     In his role as president, secretary, and treasurer of Trans Quality, Blinstrubas knowingly permitted the wage payment, deduction, and independent contractor classification practices alleged herein.

20.     Defendant Edvinas Balciunas is an adult resident of Willowbrook, Illinois. In his role as president, secretary, and treasurer of ES Express Lines, Balciunas possessed and exercised the authority to: make or participate in decisions concerning lease drivers' employment relationship with Defendants; make or participate in decisions about lease drivers' compensation; implement and enforce rules affecting the material terms of lease drivers' work, employment, and compensation; and hire lease drivers, supervise their work, and impose discipline on them.

21. In his role as president, secretary, and treasurer of ES Express Lines, Balciunas knowingly permitted the wage payment, deduction, and independent contractor classification practices alleged herein.

22. Having knowingly permitted the practices challenged herein, Defendants Masiulionis, Blinstrubas, and Balciunas are "employers" within the meaning of sections 2 and 13 of the IWCA, 820 ILCS 115/2 & 13.

23. Defendants are jointly and severally subject to the provisions of the IWPCA and are "employers" within the meaning of that statute.

## JURISDICTION & VENUE

24. The Court has original jurisdiction over Plaintiffs and the putative class members' claims with respect to the Corporate Defendants' alleged violations of the TIL regulations, 49 C.F.R. § 376, *et seq*., because those claims arise under the laws of the United States.

25. The Court has supplemental jurisdiction over Plaintiffs' and the putative class members' claims with respect to the IWPCA pursuant to 28 U.S.C. § 1367, because those claims form part of the same case or controversy as Plaintiffs' and the putative class members' claims under the TIL regulations, over which the Court has original jurisdiction.

26. The Court has personal jurisdiction over Defendants because Unlimited Carrier, Trans Quality, and ES Express Lines are Illinois corporations registered with the Illinois Secretary of State; because Masiulionis, Blinstrubas, and Balciunas are designated as corporate officers of Unlimited Carrier, Trans Quality, and ES Express Lines in their filings with the Illinois Secretary of State; and because Defendants are headquartered in and do business in the State of Illinois.

27.     The Court has personal jurisdiction over Plaintiffs and the members of the putative class because they worked in Illinois for an Illinois employer, namely, one or more Defendants.

28.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to the claims set forth in this complaint occurred in this district.

## FACTUAL BACKGROUND

29.     Trans Quality and Unlimited Carrier are interstate motor carriers authorized by the federal Department of Transportation ("DOT") to transport property in interstate commerce consistent with 49 U.S.C. §§ 13901 and 13902, *et seq*.

30.     On information and belief, ES Express Lines previously operated as an interstate motor carrier authorized by the federal Department of Transportation to transport property in interstate commerce consistent with 49 U.S.C. §§ 13901 and 13902, *et seq*.

31.     Defendants have recruited and hired individuals to work as truck drivers in order to provide freight delivery services for their clients.

32.     Plaintiffs Wooten and White were recruited by Defendant ES Express Lines and directed to report to an office in Lemont, Illinois to complete their on-boarding. About four or five other drivers were being on-boarded at the same time.

33.     On information and belief, Wooten and White were hired by ES Express Lines as W-2 employees in 2014, after which point they drove as a team for a period of time.

34.     Believing that they could make more money as solo "lease drivers," Wooten and White made arrangements with ES Express Lines to do so.

35.     Wooten and White were informed by Defendants' employees that they must incorporate in order to work as drivers for Defendants.

36.     Defendants' employees assisted Wooten and White in forming their own corporations by filling out the necessary paperwork for them and submitting that paperwork to the appropriate state authorities.

37.     At Defendants' instruction and with Defendants' assistance, Plaintiff Wooten formed a limited liability company in the State of Georgia called "Wooten Transport, Inc."

38.     At Defendants' instruction, and with Defendants' assistance, Plaintiff White formed a limited liability company in the State of Georgia called "Ray's Carrier, Inc."

39.     Both companies were incorporated on the same date in 2014.

40.     Once Wooten and White had completed the incorporation process, Defendants converted them from company drivers to "independent contractors" in the summer of 2014.

41.     In order to convert from company drivers to an independent contractors, Wooten and White were required to travel to Defendants' offices in Lemont, Illinois, to be assigned their leased trucks and to sign various documents.

**Truth-in-Leasing Allegations**

42.     On information and belief, one of the documents Plaintiffs were required to sign was an owner/operator agreement with ES Express Lines, which constitutes a "lease" within the meaning of the TIL regulations, 49 C.F.R. § 376.2(e).

43.     On information and belief, in subsequent years Plaintiffs entered into similar lease agreements with Unlimited Carrier and/or Trans Quality, at the direction of the Corporate Defendants.

44.     The Corporate Defendants, as motor carriers with operating authority granted by the Department of Transportation are subject to the TIL regulations.

45.     The Corporate Defendants' lease drivers are the "owners" of their leased equipment within the meaning of 49 C.F.R. § 376.2(e).

46.     On information and belief, the Corporate Defendants have required all prospective lease drivers to sign contracts similar or identical to the owner/operator agreements signed by Plaintiffs.

47.     The Corporate Defendants presented each owner/operator agreement to Plaintiffs on a "take-it-or-leave-it" basis, without the opportunity for negotiation or modification.

48.     On information and belief, the owner/operator agreement does not comply with TIL regulations pertaining to deductions and "chargebacks" from drivers' compensation.

49.     The TIL regulations provide, in relevant part, the following with respect to deductions and "chargebacks" from driver compensation:

> Charge-back items. The lease shall clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed. The lessor shall be afforded copies of those documents which are necessary to determine the validity of the charge.

49 C.F.R. § 376.12(h).

50.     On information and belief, the owner/operator agreement fails to identify the amounts of the chargebacks that lease drivers may be expected to bear or explain how chargebacks will be calculated.

51.     The Corporate Defendants routinely took $10 deductions from Plaintiffs' pay for TripPaks used to submit required paperwork to Defendants, but on information and belief, these chargebacks are not disclosed in the owner/operator agreement.

52. The Corporate Defendants took deductions taken from Plaintiffs' pay for truck fuel, tractor fuel, diesel exhaust fluid, and tolls, but on information and belief the owner/operator agreement does not specify that the lease driver will be responsible for these expenses.

53. The Corporate Defendants took weekly deductions taken from Plaintiffs' pay in the amount of $47 for occupational accident insurance, but on information and belief, this chargeback is not disclosed in the owner/operator agreement.

54. The Corporate Defendants took weekly deductions from Plaintiffs' pay for the lease of their tractors at a flat rate of $850 per week combined with a mileage-based charge of 10 cents per mile, but on information and belief, the owner/operator agreement does not disclose that the lease driver will be responsible for these expenses.

55. In addition, the owner/operator agreement fails to comply with the TIL regulations pertaining to the manner in which driver compensation is disclosed and calculated.

56. The TIL regulations provide, in relevant part, that the "amount to be paid by the authorized carrier for equipment and driver's services shall be clearly stated on the face of the lease or in an addendum which is attached to the lease." 49 C.F.R. § 376.12(g).

57. The TIL regulations also provide, in relevant part, that:

When a lessor's revenue is based on a percentage of the gross revenue for a shipment, the lease must specify that the authorized carrier will give the lessor, before or at the time of settlement, a copy of the rated freight bill or a computer-generated document containing the same information, or, in the case of contract carriers, any other form of documentation actually used for a shipment containing the same information that would appear on a rated freight bill.

*Id.* at § 376.12(h).

58. On information and belief, the owner/operator agreement does not comply with the TIL regulations because, *inter alia*, (a) it fails to disclose that accessorial pay will not be passed along in full to drivers and is instead subject to the same percentage as line haul revenue,

9

(b) fails to specify the expenses that may reduce the amounts owed to the driver and, (c) fails to specify which expenses are deducted from revenue before calculating the driver's percentage and which expenses are deducted from revenue after calculating the driver's percentage.

59.     On information and belief, the Corporate Defendants have made undisclosed and unauthorized deductions from revenue when calculating the driver's percentage.

60.     In addition, both Plaintiff Wooten and White recall having a security deposit deducted from their initial settlements with ES Express Lines.

61.     The security deposit constitutes an "escrow fund" within the meaning of the TIL regulations, 49 C.F.R. § 376.12(k).

62.     The TIL regulations define "escrow fund" as:

Money deposited by the lessor with either a third party or the lessee to guarantee performance, to repay advances, to cover repair expenses, to handle claims, to handle license and State permit costs, and for any other purposes mutually agreed upon by the lessor and lessee.

49. .F.R. § 376.2(l).

50.     On information and belief, the Corporate Defendants have failed to manage or maintain the security deposit in a manner consistent with the TIL regulations.

51.     For example, the Corporate Defendants have:

a.      failed to provide drivers with an accounting of the security deposit of any transactions involving that deposit; and

b.      failed to pay interest on at least a quarterly basis on amounts kept as security deposits from drivers.

52.     Lease drivers, including Wooten and White, have suffered actual damages as a result of these violations, because they have not received all compensation and interest on their

escrow accounts to which they are entitled, and have been required to pay for chargebacks that were not disclosed.

## IWPCA Allegations

53.     Plaintiffs were not classified by Defendants as employees. Rather, Defendants classified them as independent contractors.

54.     On information and belief, the fleet of trucks used by Defendants in the usual course of their business are leased from leasing companies that are owned and/or controlled by Defendants, either directly, in the case of company drivers, or indirectly, in the case of independent contractors, from whom Defendants lease the equipment, which the so-called independent contractors in turn lease the equipment from the leasing companies.

55.     Independent contractor drivers from whom Defendants leased equipment and services, including Plaintiffs Wooten and White, are referred to herein as "lease drivers."

56.     The trucks and trailers used by Defendants are stored at yards in Illinois and are serviced at shops in Illinois.

57.     Defendants' lease drivers, among them Wooten and White, all perform work – freight delivery services for Defendants' customers – that is within Defendants' usual course of business – providing freight delivery services to Defendants' customers.

58.     The trailers that Defendants' lease drivers transport, both during the period of time that they work as company drivers and during the period of time that they work as lease drivers, bear one of the Corporate Defendants' name and logo,

59.     Defendants maintain the right to control – and do, in fact, exercise control – over the terms and details of the work performed by Plaintiffs and their other lease drivers. For example:

a.      Defendants assign trucks to lease drivers and instruct them when it is time to lease a newer vehicle with fewer miles;

b.      Defendants instruct lease drivers when and where to have preventive maintenance performed, typically directing lease drivers to return to Illinois to have the maintenance performed at Defendants' shop;

c.      Drivers received assignments – called "loads" – from Defendants' dispatchers. Defendants' dispatchers are able to "track" the drivers' location while they are transporting loads using GPS or a similar device;

d.      Defendants determine all aspects of the occupational accident insurance that they require their drivers, including Wooten and White, to maintain, including selecting the insurance company, the policy, the amount of coverage, the price of premiums charged to drivers, and the amount of the deductible;

e.      Defendants control all aspect of the relationship with customers, including the setting of prices;

f.      Defendants impose a "code of conduct" on drivers; and

g.      The tractors leased by Defendants' drivers from related companies owned and/or controlled by Defendants, including the tractors leased by Wooten and White, contain "speed governors," that is, devices that limited their vehicle's speed to 68-70 miles per hour. Drivers are not permitted to alter or remove the speed governor from the tractors.

60.      Prior to being recruited by Defendants, Plaintiffs Wooten and White did not maintain or operate an independently established trucking business.

12

61. Defendants' drivers have no ability to negotiate the percentage they receive from Defendants for loads. The 82 percent is presented to them – and was presented to Wooten and White – as being "set in stone."

62. Defendants pay lease drivers by issuing written statements similar to paychecks called "settlement statements."

63. The settlement statements are itemized by load and list the line-haul revenue generated for each load and the 82 percent rate allocated by Defendants to the driver.

64. The settlement statements also list accessorial charges earned by the driver, such as layover pay and detention pay, and apply the 82 percent rate to those accessorial charges even though it is not disclosed in the owner/operator agreement that Defendants will not pass the full amount of these accessorial charges along to lease drivers.

65. Defendants take deductions from lease drivers' settlement statements and took deductions from Wooten and White's settlement statements. These deductions include amounts for TripPaks, truck fuel, tractor fuel, diesel exhaust fluid, tolls, occupational accident insurance, and the lease of the truck.

66. These deductions are not required by law.

67. These deductions are not for the benefit of lease drivers.

68. By taking these deductions from Plaintiffs' pay, Defendants required Plaintiffs to pay for necessary expenditures and losses incurred within the scope of their employment and directly related to services they performed for Defendants, which inured to the primary benefit of Defendants.

69. Defendants failed to reimburse Plaintiffs and other lease drivers for these necessary expenditures and losses incurred within the scope of their employment and directly

related to services they performed for Defendants, which inured to the primary benefit of Defendants.

70.     As a result of these deductions, lease drivers – including Wooten and White – have at times received no compensation for the work they performed; instead, they have "owed" money to Defendants.

71.     Lease drivers – including Wooten and White – do not freely give express written consent at the times these deductions are made.

72.     Defendants do not receive from drivers – and did not receive from Wooten and White – lawful authorization to take these deductions from the drivers' settlement statements.

## CLASS ALLEGATIONS

73.     Plaintiffs brings this lawsuit against Defendants as a class action pursuant to Fed. R. Civ. P. 23 for and on behalf of the following class for which they seek certification:

> All persons who, during the applicable statutory period, have performed work subject to a written lease agreement with Unlimited Carrier, Trans Quality, and/or ES Express Lines while leasing vehicles from an entity other than AGLE Express.

74.     This case may be maintained properly as a class action under Fed. R. Civ. P. 23(a) and 23(b)(3).

75.     The class is too numerous for practicable joinder of all potential class members. On information and belief, the class is comprised of at least fifty persons who are likely to reside in different parts of the United States. Plaintiffs do not know the exact size of the putative class because that information is within the control of Defendants.

76.     There are numerous questions of law or fact common to the class, and those common questions predominate over any individual issues that might exist. Common questions of law and fact include whether the owner/operator agreements with drivers satisfy the

14

requirements of the TIL regulations; whether Defendants have misclassified their lease drivers as independent contractors; whether Defendants have failed to pay drivers promised wages; and whether Defendants have taken unlawful deductions from drivers' wages.

77.     The class claims asserted by Plaintiffs are typical of the claims of potential class members. Plaintiffs' and all class members' claims of independent contractor misclassification, violation of the TIL regulations, and the damages associated with both may be ascertained from Defendants' business records.

78.     Plaintiffs will fairly and adequately protect and represent the interests of the class. Their legal interests in challenging Defendants' unlawful practices are the same as the legal interests of the putative class members; if they are successful in prosecuting these claims, their success will result in recovery for the putative class.

79.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The alternative – numerous identical lawsuits alleging similar or identical causes of action – would not serve the interests of judicial economy and the prosecution of separate actions by the individual potential class members would create a risk of inconsistent or varying adjudications with respect to individual potential class members that would establish incompatible standards of conduct for Defendants. Moreover, some class members – particularly current drivers – may be reluctant to bring their claims individually for fear of retaliation by Defendants.

80.     Public policy supports the broad remedial purposes of class actions in general and specifically to vindicate the rights afforded by the IWPCA to workers, and the rights afforded by the TIL regulations to lease drivers such as Wooten and White, whose individual claims may be too small to warrant the expense of litigation.

81.     This class action will not be difficult to manage due to the uniformity of claims among the class members and the amenability of wage and hour and TIL cases to both class litigation and the use of representative testimony and representative documentary evidence.

82.     The contours of the class will be easily defined by reference to records kept by Defendants.

**CLAIMS FOR RELIEF**
**COUNT I:**
**TRUTH-IN-LEASING REGULATIONS**
**(Class Claim Against the Corporate Defendants)**

83.     Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as if fully rewritten herein.

84.     Plaintiffs assert this claim on behalf of themselves and the Rule 23 class.

85.     As alleged, the Corporate Defendants have violated the TIL regulations by, *inter alia*, taking unspecified and excessive deductions and "chargebacks" from drivers' earnings, failing to clearly state the amounts drivers may expect to be paid for their services, and failing to compensate drivers properly.

86.     As a result of the Corporate Defendants' failure to comply with the TIL regulations, Plaintiffs and the putative class members are entitled to declaratory judgment that their lease agreements violate 49 C.F.R. § 376.12.

87.     As a result of its failure to comply with the TIL regulations, Plaintiffs are entitled to enjoin the Corporate Defendants from attempting to enforce its agreements.

88.     As a direct and proximate result of the Corporate Defendants' substantial and material failure to adhere to the TIL regulations, the Corporate Defendants have violated the rights of Plaintiffs and the putative class members and have caused Plaintiffs and the putative class members economic damages in an amount to be determined at trial.

89.     Plaintiffs bring this claim pursuant to 49 U.S.C. § 14706(d).

## COUNT II:
### ILLINOIS WAGE PAYMENT AND COLLECTION ACT
### (Class Claim Against All Defendants)

90.     Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as if fully rewritten herein.

91.     Plaintiffs assert this claim on behalf of themselves and the Rule 23 class.

92.     Defendants violated the IWPCA, 820 Ill. Comp. Stat. 1151/1 by failing to Plaintiffs and the Rule 23 class all wages earned.

93.     Defendants violated the IWPCA, 820 Ill. Comp. Stat. 1151/9 by taking unlawful deductions from the wages earned by Plaintiffs and the Rule 23 class.

94.     Defendants violated the IWPCA, 820 Ill. Comp. Stat. 115/9.5 by failing to reimburse Plaintiffs and the Rule 23 class for fuel, tolls, and other necessary expenditures and losses required of drivers in the discharge of their employment duties that inure to the primary benefit of Defendants.

95.     Plaintiffs and the Rule 23 class seek recovery of their unpaid wages, reimbursement for unlawful deductions, reimbursement for all business expenses incurred in the discharge of their employment duties, liquidated damages, and attorneys' fees and costs pursuant to 820 Ill. Comp. Stat. 115/14(a).

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court grant the following relief:

a.      Certification of this action as a class action under Rule 23(b)(1), 23(b)(2), and 23(b)(3);

b.      Appointing Plaintiffs Timothy Wooten and Paul White as class representatives and their counsel as class counsel;

c.      Declaratory judgment that the Corporate Defendants' lease agreements are unlawful and in violation of the TIL regulations;

d.      Judgment against the Corporate Defendants for all damages that the drivers sustained as a result of their violations of the TIL regulations, including but not limited to restitution for all improper or excessive charges, chargebacks, deductions, withholdings, and for compensation owed but not paid to the drivers;

e.      Injunctive relief requiring the Corporate Defendants o comply fully with the TIL regulations;

f.      An order enjoining Defendants from violating the IWPCA;

g.      All unpaid wages;

h.      Restitution for all deductions taken from class members' wages;

i.      Restitution for all operating expenses that class members were forced to bear;

j.      An award to Plaintiff and the Rule 23 class of damages, liquidated damages and penalties pursuant to the formula set forth in 820 Ill. Comp. Stat. 115/14(a);

k.      Prejudgment interest;

l.      Attorneys' fees and costs, pursuant to 820 Ill. Comp. Stat. 115/14(a);

m.      Any other relief as this Court deems just and proper.

Respectfully submitted,

TIMOTHY WOOTEN and PAUL WHITE,
individually and on behalf all others similarly
situated,

By their attorneys,


*/s/ James B. Zouras*

James B. Zouras
STEPHAN ZOURAS, LLP
222 W. Adams St, Suite 2020
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
Firm ID: 43734
jzouras@stephanzouras.com


*/s/ Rachel Smit*

Hillary Schwab*
Rachel Smit*
Brant Casavant*
FAIR WORK P.C.
192 South Street, Suite 450
Boston, MA 02111
Tel:  (617) 607-3260
Fax:  (617) 488-2261
hillary@fairworklaw.com
rachel@fairworklaw.com
brant@fairworklaw.com


*\*Pro hac vice motions forthcoming*

Date: February 26, 2024

**<u>CERTIFICATE OF SERVICE</u>**

I, the attorney, hereby certify that on February 26, 2024, I filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

<u>/s/ James B. Zouras</u>